Good morning, Your Honors. On behalf of Ravi Sapkota, if it pleases this Court, Gaurish Sareen, the BIA and the Immigration Judge fail to consider the seriousness of the political persecution. Help me on something there. The reading of the statute in Elias Zacharias is that it has to be persecution on account of the political opinion of the victim, not the perpetrator. The BIA apparently thinks the communists shakedown everybody in Nepal, and it's not a matter of whether the person they shakedown or try to recruit has any particular political opinion. It's a matter of they have a political opinion that everyone should support them. Are you claiming that it's because of Sapkota's political opinion that they shook him down, in which case you're challenging the factual premise? Or are you claiming that unwillingness to participate, to fork up enough money and participate in the communist activities in Nepal is itself classifiable as a political opinion? The first one, Your Honor, they knew he was a political opponent. They knew he was opposed to them. In their letter, they specifically stated they wanted donations for the martyrs of the war against capitalism and monarchy. They knew his house number. They went to his house. They had his cell number. They called him on his cell. They went to his place of work. They abducted him and said, we've chosen you because you speak against us. You can't have a clearer statement than that. They stole him specifically. You have spoken against us. Now it is time for judgment day, basically. You can't have a clearer fact on this. Show me that. I thought what they said was everybody has to donate financially or physically. You're now talking of the letter. The first two lines of the letter specifically state the donation is for martyrs against capitalism and against the monarchy. They knew this individual. Show me in the excerpts why the conclusion is unavoidable that it was because of his political opinion that they came after him. Because when they took him and Don't tell me. Show me. Tell me the excerpt of record number so I can look at it while you're talking. Thank you, Your Honor. I apologize. It starts from transcript 314 where basically they told him on page 316, after striking and beating him, you are speaking against us and they threatened to kill him and shoot him on lines 3 to 5. And what did the BIA or the IJ do with that statement? Ignored it. No. I thought what they did was say something like, well, it was kind of in passing and it wasn't a central reason. Then may I have said that? I apologize. Well, obviously it makes a big difference. They selected him because he was a political opponent. No. I mean, it makes a big difference what the agency did. If they ignored it, there might be a problem. If they dealt with it, then we have to deal with what they said about it. If they dealt with it, they misunderstood it and they purposely distorted it because you couldn't have a clearer statement than that. Here's an individual, not just because everybody's being selected in Nepal. Here's an individual who speaks out against them. He is a political opponent. The problem I suppose is the basic universal camera approach in administrative law. We can't just decide what we think and we can't even decide whether a preponderance of the evidence properly read would require us to reject what the BIA thinks. If there's substantial evidence on the record as a whole supporting what the BIA did, we're stuck with that. That is true, but the problem you have here, the BIA didn't do an analysis and view him as a political opponent. They ignored it. They never ever saw these statements. They never ever considered the objective documentation. Forget the statements. It starts from the United Nations and the United States Secretary of State, Assistant Secretary, stating clearly that the Maoists are a deadly terrorist force involved in violence against members of the Congress Party. He is an opponent. He is a member of the Congress Party since 1994. If you ignore that fact, then you're correct. If you take out the politics from this case, then the BIA is totally correct. It's an extortion attempt. But you can't withdraw the politics from this case. They didn't ignore it. They say that he's presented little evidence that the Maoists were even aware of his opinion. Not that he didn't present any. They just didn't think that that was the reason. And that is clearly wrong on their part, because they had his cell number, his house. They went to his -- I don't understand the relevance of that. I mean, obviously, if they were trying to collect money from him, then they had to have some information, and they had it. But he didn't -- I mean, there might have been a record put on that, in fact, they weren't collecting it from everybody, but it wasn't put on. I don't understand the relevance of that. I mean, if they were trying to collect money from him, then they had to have some information, and once they got to him, obviously, they'd have to know where to find him if they wanted to collect it from him. So what does that demonstrate? That demonstrates that they knew he was an opponent. No. It demonstrates that they knew who he was and where to find him to get money. And they wanted to intimidate him. And it states in the record, everybody pays the Mowers. Why didn't he pay them? Why didn't he give them the money they wanted? That by itself doesn't prove much. I mean, everybody's college alumni association has their address and their phone number, and they call them up and they say, everybody else in your class is contributing. Why aren't you? It's – that's not enough. It has to be that they're trying to torment him in a way that rises to the level of persecution because of his opinion. The alumni is not a deadly terrorist organization with a political agenda, political ideology, and this individual opposes that political ideology. Even if your college was an especially nasty one and they said, send us $1,000 or we'll break your legs, it still wouldn't be persecution on account of political opinion. That is correct. But specifically if they say you're speaking out against us and you don't pay us, we're going to kill you, that is clearly – No, it wouldn't be unless it was because of opinion. If it was because you have $1,000, we want $1,000, give us the $1,000 or we'll break your leg and we'll make it so bad you'll wish we'd killed you. That's an awful thing, but it's not on account of political opinion. It's on account of having the $1,000. But the gain, you see, Your Honor, the point is if you take away the politics from this, you're correct. They selected him. They weren't interested in the money from him. They wanted to intimidate him. They wanted him to stop what he was doing and not to oppose them. They wanted him to contribute against the war, against the monarchy, and against capitalism. If I may just basically keep the rest of my time. Thank you. Thank you. Kagan. Good morning. May it please the Court. Kelly Walls for the Attorney General. The only issue in this case is whether Mr. Sapkota's political opinion was a central reason for the extortion. To me, an awful lot turns on whether the IJ and BIA accounted for the fact that there is a statement in the record where someone said to him that we're doing this because you're stuck against us. Does the IJ or BIA opinion deal with that at all? I believe it does, Your Honor. In the second full paragraph of the BIA's decision, it says – I just lost my place. While Mr. Sapkota, Respondent Mr. Sapkota, did publicly support another political opinion, he has presented little evidence that the Maoists were even aware of the support or made any threats based on his political opinion. The only evidence in the record that they had any knowledge of his political opinion was the statement. So what's wrong with that evidence? I mean, that evidence doesn't help. I mean, another construction of everything that happened here. I mean, it's very troublesome to me that they don't specifically acknowledge or say little, if any, is not – doesn't acknowledge that somebody who was – who was persecuting him, or at least beating him up and we may assume for the present was persecuting him, said it's because of your political opinion. Why isn't that per se reversible if they didn't account for that? I think it's because when they look at the rest of the evidence, the overwhelming majority of the evidence suggests that this was a pure extortion attempt. It was – Well, I mean, the truth is that even if they write you a letter, as Judge Kleinfeld was saying, they write you a letter saying everybody's contributing, but in fact they choose people, then presumably they didn't write that letter to everybody and they presumably didn't beat up everybody who didn't pay them. No, but it's actually – Excuse me just a minute. I'm sorry. So there must have been some sort of selection criteria. Maybe they wanted everybody to pay them, but they obviously were not going after everybody. They chose them for some reason, and we have some evidence of why they chose him, i.e., because he spoke out against them. And I gather there's not any dispute that he did speak out against them. No, that's not in dispute. I'm sorry, what? That's not in dispute. Right. And it's not in dispute that somebody said this to him. No, that's not in dispute. So how can we just leave a vacuum like that? Well, because I think it's equally reasonable on this record to believe that he was extorted because he was a business person. In fact, both the U.N. and the Department of State report indicate that not only were business people targeted, so were local communities, government officials, nongovernmental organizations, schools, business people, teachers, Americans, American hotels where Americans frequent, workers, so it is a – But they told him why they were – They also said what they actually said at page 316 in the record, is that he did not make the donation and he spoke out against them. There were two reasons given, not just the single reason. Okay. On this record, could his political opinion be a tangential reason for the attack itself? Perhaps. Perhaps a reasonable factfinder could find that. But it is not one central reason. I mean, truthfully, if the BIA had said what you just said, maybe I'd say okay. But it didn't say anything about this. It just didn't account for the fact that there was direct evidence of another motive. It just didn't deal with it. Well, I think in acknowledging that there was any evidence, they in fact did. But his single statement, when combined with the fact that it was the failure to make the payment and the speaking out against was the actual statement by the malice, combined with the letter that says every Nepali must donate, with the two telephone calls that reiterated that every Nepali must donate, and the background evidence that indicates that wide segments of the population are being extorted by the malice, that suggests that the malice are simply trying to. But there's still a selection criteria for who is being harassed, right? Yes. And I would suggest on this record that it appears it is those who have the financial resources to pay the extortion demands. As Mr. Subcota said in his testimony, his friends said you have to pay this. It appears that they had paid it. They're going after people with the financial means to make the contribution to the party in order to finance. What about when the country report mentioned that they even shook down Americans who made the mistake of being in Nepal to, I guess, climb Mount Everest or something. What if any evidence in the record that they picked their Americans based on whether they were pro or anti the monarchy or in Nepal or any other political opinion? No, Your Honor. That was part of the Department of State travel advisory to Americans, warning them that Americans had been shook down for donations. The way I understood it, the BIA listens to this fellow say they shook me down, and they mention you spoke in one of the several communications. They mention his opinion, and then the country report has them shaking down people who at least, unless I missed something in the record, don't have any political opinion about Nepali affairs. I think that's a correct statement. Really, this is – I think this is – you know, this record evidence doesn't compel the conclusion that the Maoists targeted Mr. Subcota for his political opinion as much as it establishes with ample evidence that the Maoists were targeting people who had financial resources. Is that still the standard, the evidence has to compel a contrary conclusion? Yes, under the substantial evidence standard for this Court's review, yes. The evidence – Mr. Subcota's statement that they – while beating him, that he had not given a donation and that he spoke out against them would have to compel reversal of the agency's decision. And has that been expanded by this Parosimova motive? It has to be a central reason, which it is, only if the – if the persecutor would not have harmed the applicant if such motive did not exist? No. The record – the substantial evidence or whether the record compels reversal would be this Court's review of the agency's decision. What the one central reason standard in Parosimova explained was that instead of just showing it simply on account of a political opinion, the political opinion must be one central reason for the persecution. So the Court would review whether the record compels reversal of the agency's conclusion that his political opinion was not one central reason. Can there be more than one central reason? Yes. As this Court explained in Parosimova, there definitely can be. In this case, though, I would say that his political opinion was – standing alone was not sufficient to – for the Maoist to attack him, which is one of the criteria that this Court articulated in Parosimova. And as evidence of that, I would show that Mr. Sapkota had been politically active for a decade prior to the extortion letter being sent, during which time he spoke on at least two occasions and had no harm come to him. Does the – does the record show in the country of conditions that I understand that the people were being broadly extorted? Does it show that they were being broadly beaten and actually attacked as opposed to asked for the money? It appears that if the people who did not pay the extortion demands were beaten. That that was the issue. I gather that the BIA did not adopt the IJ's conclusion that there wasn't persecution. No. It limited its decision to solely the nexus issue as opposed to whether or not the harm he suffered rose to the level of persecution. So that's why the only issue in this case, the only – Well, the other issue is the changed conditions issue on the motion to reopen, right? Respectfully, Mr. Sapkota did not raise that issue in his brief to the board and therefore has waived it. So we would suggest that it's not currently before the committee. He didn't raise it in the brief to the board? I'm sorry, to the brief to this Court. Oh, I see. Sorry. So as well, he failed to raise the issue of the denial of protection under the Convention of – against torture. So really the only issue here is whether or not he's eligible for asylum or withholding of removal. And we – we present that he is not because he failed to establish that his political opinion was a central reason for the persecution. If there are no further questions. Thank you very much. Thank you. Can I ask a question about the political opinion, the statement about because you spoke against us? Nonetheless, it appears that he understood and they understood that if he had given them the money, they wouldn't have attacked him anymore. Is that right? If he had given them the money, then he would be a supporter of them and he would be intimidated, yes. He would no longer be a political boss. So that kind of belies the notion that the fact that he – they spoke against him was a central issue. The central issue was that he didn't give them the money. The central issue is he was selected because he was a political opponent and didn't give them the money. That is correct. He was selected because he was a political opponent, not because everybody in Nepal is selected by the Maoists. Judge Clantrell just raised the question why the Americans were targeted. The same reason Islamic jihadists would target Americans in Afghanistan and Pakistan is because they see the United States individuals as enemies of theirs. The communists see the United States as an enemy of theirs. That's why they targeted the United States individuals, not to shake them down. But they were targeted for money. They're targeted because they're individuals for money but seen as political opponents. But you can't take the ideology of Maoism and communism out of this. This is a very selective – I mean, they have a political ideology. They want to overthrow capitalism. They want to overthrow the monarchy. And they want to overthrow the Congress party. This individual, if he did give them money, counsel would be saying right now, he's a material supporter of terrorism. Should he go back and give them money? I think we just took the communists there off and the Maoists there off the list. They're now the government. Well, I don't want to deal with that. I think this is a 2007, 2008 case. I mean, if you're going to raise it. Is it true that you didn't raise the change conditions in your brief to us? I did. It's under the well-founded fear. I'm sorry? It is mentioned in the brief, Your Honor. It's mentioned clearly in the brief that the Maoists in 2008 seized and took over the power and they run the whole country and the police and the reports. The State Department reports clearly indicate the police have been told to step down, not to encounter the Maoists and let them do whatever they want. They've given them a carte blanche. They blow up police stations. They do whatever they want in Nepal. Thank you. Thank you very much. Thank you to both counsel. In Secoda v. Holder, the case is submitted.
judges: Smith, Kleinfeld, Berzon